JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| MABEL ARREDONDO,<br><br>Plaintiff,<br><br>v.<br><br>SUNLIFE POWER LLC, a Delaware Limited Liability Company<br><br>Defendants. | §§§§§§§§§§§§§ EP22CV0299 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff MABEL ARREDONDO is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant SUNLIFE POWER LLC ("SUNLIFE") is a Limited Liability Company organized and existing under the laws of Delaware with its principal address at 331 Ushers Road, Ballston Lake, New York 12019 and can be served via its registered agent, Harvard Business Services, Inc., at 16192 Coastal Highway, Lewes, Delaware 19958.

### NATURE OF ACTION

3. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

1

4. Plaintiff MABEL ARREDONDO ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant SUNLIFE's telemarketers and agents placed illegal unauthorized telemarketing phone calls to her in violation of the TCPA.

5. Defendant SUNLIFE offers solar panel systems to consumers. As part of marketing their services, Defendant SUNLIFE hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6. Plaintiff never consented to receive any of these phone calls, which were placed to her for telemarketing purposes.

## JURISDICTION AND VENUE:

7. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9. This Court has personal jurisdiction over Defendant SUNLIFE because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District. Defendant SUNLIFE installs solar panels in Texas as a direct result of the telephone solicitations such as the phone calls in this case.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant SUNLIFE regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller ...may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23. Plaintiff's personal cell phone number (915) XXX-8219 has been successfully registered on the National Do-Not-Call Registry since March 2022.

24. Defendant SUNLIFE hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an ATDS to solicit their solar panel systems.

25. Defendant SUNLIFE approves of the contracts with these telemarketers.

26. Defendant SUNLIFE pays the telemarketers out of bank accounts they own and control.

27. Defendant SUNLIFE is well aware that the unauthorized phone calls being made on their behalf soliciting solar panel systems violate the TCPA.

28. Defendant SUNLIFE knowingly and willfully violates the TCPA because doing so benefits them financially when consumers purchase their solar panel systems.

29. Plaintiff received at least nine (9) illegal unauthorized phone calls ("the calls") to her personal cell phone (915) XXX-8219 from or on behalf of Defendant SUNLIFE within a two-week period.

30. Plaintiff has never had any relationship with Defendant SUNLIFE and never knew who Defendant SUNLIFE was prior to the unauthorized phone calls being made to her cell phone.

31. On July 7, 2022, Plaintiff received a phone call to her personal cell phone from a telemarketer calling on behalf of Defendant SUNLIFE named Candace that stated she was calling from "Pointer."

32. Defendant SUNLIFE trains their telemarketers not to reveal their true identity for the sole purpose of ducking liability for violating the TCPA.

33. Candace was soliciting solar panel systems on behalf of Defendant SUNLIFE.

34. Plaintiff was confused and aggravated for receiving a call soliciting solar panel systems because Plaintiff never gave her prior express written consent to receive phone calls regarding solar panel system services.

35. Candace attempted to transfer Plaintiff to a representative to further assist her, however, no one was available to assist Plaintiff.

36. Shortly after, Plaintiff received another call from "Candace at Pointer". Plaintiff answered and was greeted by the same telemarketer from the previous phone call soliciting solar panel systems on behalf of Defendant SUNLIFE.

37. Plaintiff was annoyed and aggravated for continuing to receive the same phone calls. Plaintiff feigned interest in the call to determine who kept calling Plaintiff's phone. Candace then transferred Plaintiff to Nathan Washburn at Sunlife Power.

38. Nathan then asked Plaintiff qualifying questions about how much she was paying every month on her electricity bill, the name of her electric provider, her credit rating, and solicited Plaintiff for solar panel systems on behalf of Defendant SUNLIFE.

39. Plaintiff advised Nathan she was interested and would consider adding solar panel systems for the sole purpose of identifying the company responsible for the unauthorized illegal phone calls.

40. Nathan sent Plaintiff an email requesting 12 months of Plaintiff's utility bills which revealed the company responsible for the calls. *See Exhibit A.*

41. Thereafter, Nathan kept calling Plaintiff to schedule a time to meet with her at her residence to provide her with a quote for solar panels. *See Exhibit B.*

42. Plaintiff never gave her prior express written consent to receive follow up calls from Nathan.

43. Defendant SUNLIFE knew the calls were being directed into the Western District of Texas and also knew these actions could cause them to be summoned into court as a result of those actions.

44. Defendant SUNLIFE has been sued and is currently in litigation for the class action matter, *Wood v. Sunlife Power; 1:22-CV-00556-DNH-TWD* in the Northern District of New York.

45. Defendant SUNLIFE refuses to curtail their illegal behavior because violating the TCPA benefits Defendant SUNLIFE financially by generating new customers to purchase their solar panel systems.

46. Defendant SUNLIFE agents spoofed the caller ID's to a (915) area code on at least three occasions to trick Plaintiff into thinking the calls were local.

47. Table A below summarizes the illegal unauthorized phone calls Plaintiff received from or on behalf of Defendant SUNLIFE Table A:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 07/07/2022 | 10:04 AM | 213-833-9736 | Call from Sunlife telemarketer Candace |
| 2 | 07/07/2022 | 12:13 PM | 804-223-8932 | Call from Sunlife telemarketer Candace |
| 3 | 07/08/2022 | 8:01 AM | 518-406-0229 | Call from Nathan at Sunlife |
| 4 | 07/08/2022 | 3:00 PM | 915-238-3813 | Missed call from Nathan |
| 5 | 07/11/2022 | 8:02 AM | 518-406-0229 | Missed call from Nathan |
| 6 | 07/11/2022 | 8:03 AM | 518-406-0229 | Missed call from Nathan |

| 7 | 07/11/2022 | 1:12 PM | 915-237-3813 | Call from Nathan |
| 8 | 07/11/2022 | 1:52 PM | 915-238-3833 | Call from Nathan |
| 9 | 07/20/2022 | 2:46 PM | 518-406-0229 | Call from Nathan |

48. Defendant SUNLIFE employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

49. Defendant SUNLIFE and their agents and co-conspirators amassed lists of thousands of potential customers from public records, data aggregators, and then placed phone calls using an ATDS *en masse* to market their solar panel systems.

50. Defendant SUNLIFE has knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendant SUNLIFE knew full well that telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant SUNLIFE. Defendant SUNLIFE willfully accepts these referrals and compensate the telemarketers for their illegal unauthorized phone calls.

51. Defendant SUNLIFE refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant SUNLIFE financially.

52. Defendant SUNLIFE is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") does not contain Defendant SUNLIFE's registration.

53. Defendant SUNLIFE does not qualify for an exemption under § 302.101.

54. No emergency necessitated none of the alleged phone calls.

55. Plaintiff sent an internal do-not-call policy request to Defendant SUNLIFE to email info@sunlifepower.com on August 22, 2022.

56. Despite this e-mail, Defendant SUNLIFE failed and/or refused to send Plaintiff a do-not-

call policy.

57. Upon information and belief, Defendant SUNLIFE did not have a written do-not-call policy while it was sending Plaintiff the unauthorized phone calls.

58. Upon information and belief, Defendant SUNLIFE did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

59. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

60. Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of her phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using her telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT SUNLIFE

61. Defendant SUNLIFE is vicariously liable for the telemarketing calls that generated the lead on their behalf.

62. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

63. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

64. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

65. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

66. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

67. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587.

68. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587.

69. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588.

70. Defendant SUNLIFE is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when doing so.

71. Defendant SUNLIFE knowingly and actively accepted business that originated through illegal telemarketing.

72. Defendant SUNLIFE knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

73. By hiring a company to make calls on its behalf, Defendant SUNLIFE "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

74. Moreover, Defendant SUNLIFE maintained interim control over the actions of its telemarketers.

75. For example, Defendant SUNLIFE had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

76. Furthermore, Defendant SUNLIFE had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential

customers of Defendant SUNLIFE and the ability to require them to respect the National Do Not Call Registry.

77. Defendant SUNLIFE also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

78. Defendant SUNLIFE donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "solar panel system" services in the abstract.

79. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

80. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

81. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

82. Defendant SUNLIFE's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant SUNLIFE. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592.

83. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

84. Defendant SUNLIFE is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for solar panel systems on their behalf.

### THE TEXAS BUSINESS AND COMMERCE CODE 305.053

85. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

86. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

87. The actions of the defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

88. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

89. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

90. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

91. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

92. Plaintiff has been denied the use of her phone, enjoyment of her phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had her privacy invaded by the calls.

93. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

94. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by and/or on behalf of Defendant SUNLIFE.

95. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

96. The calls were to the Plaintiff's cellular phone (XXX) XXX-8219, which is the Plaintiff's personal cell phone that she uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts.

## CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

97. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

98. Defendant SUNLIFE and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least two (2) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

99. Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(b)(3)(B) by Defendant SUNLIFE by the telephone calls described above, in the amount of $500.00 per call.

100. Plaintiff was further statutorily damaged because Defendant SUNLIFE willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

101. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant SUNLIFE and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

### COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

102. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

103. Defendant SUNLIFE called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

104. Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(3)(F) by Defendant SUNLIFE by the telemarketing calls described above, in the amount of $500.00 per call.

105. Plaintiff was further statutorily damaged because Defendant SUNLIFE willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

106. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

107. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

108. The foregoing acts and omissions of Defendant SUNLIFE and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

    c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

109. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

110. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR:
### Violations of The Texas Business and Commerce Code 305.053

111. Plaintiff incorporates the foregoing allegations as if set forth herein.

112. The foregoing acts and omissions of Defendant SUNLIFE and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing unauthorized calls to Plaintiff's cellular telephone number without her prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendant SUNLIFE violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

113. Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

114. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## COUNT FIVE:
### (Violations of The Texas Business and Commerce Code 302.101)

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

115. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

116. The foregoing acts and omissions of Defendant SUNLIFE and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without her prior express written consent.

117. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302(a)

118. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including courts costs and investigation costs, deposition expenses, witness fees and attorney's fees. Texas Business and Commerce Code 302.302(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MABEL ARREDONDO prays for judgment against the defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for 2 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 9 calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.  An award to Plaintiff of damages, as allowed by law under the TCPA;

H.  An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

I.  Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

August 26, 2022,                                Respectfully Submitted,

*/s/ Mabel Arredondo*

MABEL ARREDONDO
Plaintiff, Pro Se
(915) 999-8219
9328 Lait Drive
El Paso, Texas 79907
mabel.arredondo22@gmail.com